American Commercial Barge Line

1701 East Market Street

Jeffersonville, IN 47130

Office: 812-288-0599

Cell: 502-774-0104

Fax: 812-288-0294

Sean.Gallagher@aclines.com





*This message contains CONFIDENTIAL INFORMATION intended solely for the use of the addressee(s) named above. Any review, disclosure, distribution, copying or use of the information by others is strictly prohibited. If you have received this message in error, please advise the sender by immediate reply and delete the original message.*

**From:** Robert (Bob) Williams [mailto:solidstonebob@yahoo.com]
**Sent:** Tuesday, July 05, 2016 2:02 PM
**To:** Nichols, David J; Robert Williams
**Subject:** CRUCIAL, IMPORTANT, AND URGENT: Devils Swamp lease proposal(s)

D.J., This is Robert H. "Bob" Williams, one of the UNDIVIDED owners (Owners in Indivision) of Devils Swamp on the Mississippi River, and we have spoken on the phone together before, as you remember, and have exchanged emails.

1. Please update me on the CURRENT status of your company's interest in a renewal of the expired 15 year (10 + 5 option) in Devils Swamp.

2. Also, please update me on the CURRENT status of any and all of your company's barges and/or ANY other movables that are docked in or on the Devils Swamp property.

3. Also, update me on any and all other information that any or all owners of Devils Swamp might be interested in, concerning your company's intentions and/or decisions having to do with Devils Swamp.

This is a CRUCIAL, and IMPORTANT, and URGENT request, asked in good faith. I trust you and your company will respond in good faith, as well, and do so fully and promptly.


Sincerely,

Robert H. "Bob" Williams

11850 U.S. Hwy 59 N

Livingston, TX 77351


(updated permanent address)


936-933-3195 (updated telephone number)

**EXHIBIT**

**2**

_____

**From:** "Gallagher, Sean P." <Sean.Gallagher@aclines.com>
**To:** "solidstonebob@yahoo.com" <solidstonebob@yahoo.com>
**Sent:** Wed. Jul 6, 2016 at 7:35 AM
**Subject:** FW: CRUCIAL, IMPORTANT, AND URGENT: Devils Swamp lease proposal(s)

Mr. Williams,

Please note that DJ is no longer with the company. You can direct future communication to my attention.

You should be receiving a check in the next few days in the amount of $444.48, which covers the period of April-July.

Let me know if you have any questions.

Sean


Sean Gallagher, Esq.

Sr. Corporate Counsel

American Commercial Barge Line

1701 East Market Street

Jefferson, IN 47130

Office: 812-288-0599

Cell: 502-774-0104

Fax: 812-288-0294

Sean.Gallagher@aclines.com

**EXHIBIT 3**

**From:** Robert (Bob) Williams [mailto:solidstonebob@yahoo.com]
**Sent:** Wednesday, July 06, 2016 8:52 AM
**To:** Gallagher, Sean P.; Robert Williams
**Subject:** Re: CRUCIAL, IMPORTANT, AND URGENT: Devils Swamp lease proposal(s)


Sean, thank you for your prompt response, but there seems to be an enormous set of unexplained background actions, seemingly and totally contradictory to facts:

I, Robert H. Williams, did NOT agree to, NOR sign off on ANY barge lease, and I have documentary evidence that your company stated that it would NOT consider ANY barge lease WITHOUT ALL UNDIVIDED OWNERS' AGREEMENTS, UNANIMOUSLY. Obviously, that is the meaning of "Owners in Indivision." It must be unanimous of ALL the Owners in Indivision. Please send ALL documentation to explain what us going on, and immediately.


Please explain fully, in good faith, how and why this could occur.


Robert H. Williams

Sent from Yahoo Mail on Android


On Wed, Jul 6, 2016 at 7:35 AM, Gallagher, Sean P.

<Sean.Gallagher@aclines.com> wrote:

Mr. Williams,


Please note that DJ is no longer with the company.  You can direct future communication to my attention.


You should be receiving a check in the next few days in the amount of $444.48, which covers the period of April-July.


Let me know if you have any questions.


Sean


Sean P. Gallagher, Esq.

Sr. Corporate Counsel



**From:** "Gallagher, Sean P." <Sean.Gallagher@aclines.com>
**To:** "solidstonebob@yahoo.com" <solidstonebob@yahoo.com>
**Sent:** Wed, Jul 6, 2016 at 10:56 AM
**Subject:** RE: Update, RE: CRUCIAL, IMPORTANT, AND URGENT: Devils Swamp lease proposal(s)

Mr. Williams,

I have not specific knowledge of what happened or what DJ may have said to you.  I will have to look through the files.  In any event, if you don't have a signature page, I am happy to send one to you to sign. Let me know if that would work.

Seam

Sean Gallagher, Esq.

Sr. Corporate Counsel

American Commercial Barge Line

1701 East Market Street

Jefferson, IN 47130

Office: 812-288-0599

Cell: 502-774-0104

Fax: 812-288-0294

Sean.Gallagher@aclines.com



**From:** Robert (Bob) Williams [mailto:solidstonebob@yahoo.com]
**Sent:** Wednesday, July 06, 2016 12:34 PM
**To:** Gallagher, Sean P.; Robert Williams
**Subject:** Update, RE: CRUCIAL, IMPORTANT, AND URGENT: Devils Swamp lease proposal(s)

Sean, FIRST OF ALL, please email send me signed (facsimile/xerox type) copies of each and every of the signed barge lease contracts, as signed by each and every one of my fellow UNDIVIDED OWNERS, AND also the barge company, including, but not limited to, GS (Skeet) LeBlanc and also Buck Moyse.

Also, what funds have been sent to ANYOTHER UNDIVIDED OWNERS, and WHEN?Please consider these to be formal requests.

Also, please state clearly which individuals in your barge company negotiated this alleged/purported lease (?), and WHEN, AND WITH WHOM on the Devil's Swamp side?

Also, do EITHER you, as Senior Corporate Counsel, either were aware, or should have been, that I was "excluded" from the process of corporate negotiations and/or ratification of this ALLEGED lease?

I look forward to evidence of you and your company's "good faith" in all these dealings, as evidenced by nothing less than your and your company's FULL AND COMPLETE AND THOROUGH AND PROMPT DISCLOSURE. Anything short of that would be necessarily viewed as evidence of bad faith, as I am sure that you, as a lawyer, can appreciate. This is disturbing on SEVERAL LEVELS, and I ask and wish your full co-operation, to defuse this potentially legally explosive and highly troubling situation.

Sincerely,

Robert H. Williams

11850 U. S. Hwy 59 N

Livingston, Texas 77351

936-933-3195 (24/7/365) cell



**From:** "Gallagher, Sean P." <Sean.Gallagher@aclines.com>
**To:** "solidstonebob@yahoo.com" <solidstonebob@yahoo.com>
**Sent:** Wed. Jul 6, 2016 at 3:10 PM

Mr. Williams,

See attached. It is my understanding that the first rent checks for all the owners, for the period of April-July are being cut now and that you all should have them soon. We send them all at the same time.

For more information, I would suggest that you speak with your fellow owners. If there is anything else I can do, please let me know.

Regards,

Sean Gallagher, Esq.

Sr. Corporate Counsel

American Commercial Barge Line

1701 East Market Street

Jefferson, IN 47130

Office: 812-288-0599

Cell: 502-774-0104

Fax: 812-288-0294

Sean.Gallagher@aclines.com

# LEASE AGREEMENT

**THIS LEASE AGREEMENT** (this "**Lease**") is made and entered into as of the 1st day of April, 2016, by and among ACBL Transportation Services LLC, a Delaware limited liability company (f/k/a ACL Transportation Services LLC) (hereinafter referred to as "**Lessee**") and the following:

| Name | Address | Undivided Ownership Interest |
|---|---|---|
| Becky L. Simmons | 7948 B Wrenwood Blvd. Baton Rouge, LA 70809 | 1/90th |
| Betty Moyse Simmons | 36 Jamestowne Court Baton Rouge, LA 70809 | 1/30th |
| Jean Moyse Simmons Wilcox | 1964 Country Club Drive Baton Rouge, LA 70808 | 1/90th |
| Joseph Gottlieb Simmons | 7212 Joliet Avenue Baton Rouge, LA 70806-8100 | 1/90th |
| Lewis Arthur Moyse | 6210 Menlo Drive Baton Rouge, LA 70808 | 2/90ths |
| Hermann Moyse III | 5926 Boone Drive Baton Rouge, LA 70808 | 2/90ths |
| Marie Moyse Schlesinger | 1112 Falcon Road Metairie, LA 70005 | 2/90ths |
| KNMW, LLC | 900 Rue St. Michael Hammond, LA 70403 | 1/75th |
| Robert H. Williams | 11850 U.S. Hwy 59 North Livingston, TX 77351 | 1/225ths |
| Jason Scott Williams | 4922 Cottage Hill Drive Baton Rouge, LA 70809 | 2/225ths |
| Lance LaPlace | 17842 Five Oaks Drive Baton Rouge, LA 70810 | 1/75th |
| Colby LaPlace, Jr. | 2684 Appaloosa Trail Pinole, CA 94564 | 1/75th |
| East West Landco, L.C. | 8811 Veterans Memorial Blvd. Metairie, LA 70003-5236 | 2/75ths |
| MSOF Corporation | 3924 Chatfield Avenue Baton Rouge, LA 70808 | 35/75ths |
| St. Thomas Point, L.L.C. | P.O. Box 3678 Baton Rouge, LA 70821 | 7/75ths |
| Holloway Brinkley Lyons | 6643 Muirlands Drive La Jolla, CA 92037 | 1.5/75ths |

6889919_5

| Name | Address | Undivided Ownership Interest |
|------|---------|------------------------------|
| Margaret DeSaix Brinkley St. Charles | 14662 Via Monteverde San Diego, CA  92127 | 1.5/75ths |
| Guy A. Pickering and Tammy Pickering | 7818 Elliott Road Baton Rouge, LA  70817 | 1/75th |
| Steven Wilson and Cynthia Wilson | 19350 Womack Road Baton Rouge, LA  70816 | 1/75th |
| GSL Corporation | 3924 Chatfield Avenue Baton Rouge, LA  70808 | 2/75ths |
| Lee Bec Lands, Ltd. | 14203 Vista Mar Circle Houston, TX  77095 | 10/75th |

(hereinafter, each referred to individually as an **"Individual Lessor"** and collectively referred to as **"Lessor"**).

**RECITALS**

**WHEREAS**, Lessor is the owner of certain property, batture and river frontage along the edge of the Mississippi River situated in the Parish of East Baton Rouge, State of Louisiana, on the left descending bank of the Mississippi River all as is more particularly described on **Exhibit "A"** annexed hereto and made a part hereof (the **"Principal Property"**); and

**WHEREAS**, the Principal Property includes that certain river frontage which consists of 13,700 feet, more or less, on the Mississippi River (including the river's edge), in those portions of sections 16, 17, 19 and 20 owned by Lessor and the southern portion of section 63 owned by Lessor all lying along the riverbank by a depth of 700 feet (the **"Leased Property"**); and

**WHEREAS**, Lessee desires to lease from Lessor, and Lessor desires to lease to Lessee, the Leased Property in accordance with the terms and conditions of this Lease.

**NOW, THEREFORE**, in consideration of the promises and mutual agreements set forth herein, Lessee and Lessor hereby agree as follows:

1.      Lessor represents and warrants that it has full power and authority to enter into this Lease and each of the Individual Lessors represents and warrants that he, she or it has clear title to an undivided interest in and to the Leased Property in the proportion shown above and is entitled to receive the rental payments hereunder on such undivided interest free and clear of the claims of any other persons. Lessor hereby grants to Lessee the right to apply and obtain and Lessee agrees to apply and obtain at Lessee's sole cost any and all necessary permits and approvals from the State of Louisiana, the United States Army Corps of Engineers, and all other governmental agencies required to approve or issue permits to construct,

6889919_5

establish and maintain mooring facilities as may presently exist or which will be constructed hereinafter by Lessee at the Leased Property.

Each Individual Lessor shall, severally, defend, indemnify, and hold Lessee harmless from and against any and all claims, liabilities, losses, and expenses (including attorneys' fees) arising from or related to (i) breach by such Individual Lessor of any representation or warranty made by such Individual Lessor in this Lease, (ii) any claim by a third-party arising by, through or under such Individual Lessor alleging an ownership interest in the Leased Property, or (iii) any claim by a third-party arising by, through or under such Individual Lessor claiming an interest in rental payments made by Lessee to such Individual Lessor under this Lease.

2.      The primary term of this Lease shall be for a period of ten (10) years commencing on April 1, 2016 and extending through March 31, 2026, unless sooner terminated under the terms and conditions hereof (the "**Primary Term**").

3.      Provided that this Lease is in full force and effect as of the date that the option hereinafter described is exercised and that Lessee is not in default hereunder, Lessee shall have the right and option to extend the term of this Lease for one additional five (5) year term, extending from April 1, 2026, through and including March 31, 2031 (the "**Renewal Term**"), all on the same terms and conditions as contained herein, except that the rentals shall increase in accordance with Section 4 below.  In the event that Lessee wishes to exercise its option for the five (5) year Renewal Term, Lessee shall give Lessor written notice at least ninety (90) days prior to the expiration of the Primary Term in accordance with Section 19 hereof.

4.      During the Primary Term and the Renewal Term, if any, Lessee shall pay to Lessor, in accordance with Section 5, the following rental amounts per year, provided such amounts shall be due and payable in twelve (12) equal installments on or before the first day of each month (commencing on April 1, 2016):

   (a)      From April 1, 2016 through March 31, 2021, Lessee shall pay $300,000 per year.

   (b)      From April 1, 2021 through March 31, 2026, Lessee shall pay $340,000 per year.

   (c)      In the event Lessee timely exercises its option for the Renewal Term as provided in Section 3 hereof, from April 1, 2026 through March 31, 2031, Lessee shall pay $385,000 per year.

5.      The rental payments for the Primary Term and the Renewal Term, if any, shall be made by Lessee payable as follows:

   (a)      With respect to the ownership interest of each Individual Lessor other than KNMW, LLC, Robert H. Williams and Jason Scott Williams, constituting 73/75ths of the rental payments – to such Individual Lessor's agents, Gordon S. LeBlanc, Jr. and Hermann Moyse, III, and mailed to 3924 Chatfield Avenue,

6889919_5

Baton Rouge, LA 70808, or at such other address as may be designated by each such Individual Lessor. The rent payable pursuant to this Subsection 5(a) shall be made payable as instructed by such agent(s). In the event of the death, disability or resignation of Gordon S. LeBlanc, Jr. or Hermann Moyse, III, the remaining agent shall continue to act as the sole agent of each Individual Lessor other than KNMW, LLC, Robert H. Williams and Jason Scott Williams. In the event of the death, disability or resignation of both Gordon S. LeBlanc, Jr. and Hermann Moyse, III, the Individual Lessors, other than KNMW, LLC, Robert H. Williams and Jason Scott Williams, holding at least 37/73rds of the undivided interest in the Leased Property, shall appoint one or more successor agents to act for the Individual Lessors other than KNMW, LLC, Robert H. Williams and Jason Scott Williams and shall notify Lessee of such appointment;

(b)     With respect to the ownership interest of KNMW, LLC, constituting 1/75ths of the rental payments – pursuant to payment instructions to be provided by Stephen M. Williams directly to the Lessee pursuant to a separate written letter;

(c)     With respect to the ownership interest of Robert H. Williams, constituting 1/225ths of the rental payments – pursuant to payment instructions to be provided by Robert H. Williams directly to the Lessee pursuant to a separate written letter; and

(d)     With respect to the ownership interest of Jason Scott Williams, constituting 2/225ths of the rental payments – pursuant to payment instructions to be provided by Jason Scott Williams directly to the Lessee pursuant to a separate written letter.

6.     Lessee has fully inspected the Leased Property and accepts the Leased Property in its present condition, and Lessor shall not owe Lessee any repairs, maintenance, alterations, changes or improvements during the term of this Lease or any extension thereof.

7.     Lessee shall, upon prior written notice to Lessor (which notice shall set forth the name, address, contact person, telephone number and facsimile number of the assignee or sublessee, as the case may be), be entitled to assign in writing this Lease or sublease in writing the Leased Property, in whole or in part, to any parent, subsidiary or affiliate firm, company, corporation or partnership of Lessee or any entity acquiring substantially all of the assets of Lessee, without being required to obtain the approval of Lessor; provided, however, written approval, not to be unreasonably withheld, must be obtained from Lessor should Lessee desire to assign this Lease or sublease the Leased Property, in whole or in part, to any other third party; provided further that in the event of any permitted assignment or sublease, Lessee shall continue to be obligated to Lessor under the terms and conditions hereof.

6889919_5

8.    The Leased Property shall be used exclusively by Lessee and its independent contractors or permitted assigns solely for the following purposes:

(a)    The anchoring and mooring of all boats, barges and other vessels, whether or not owned by Lessee and whether loaded or empty;

(b)    Operations dealing with tugs and the making and breaking of tows at, about, or around the Leased Property;

(c)    The cleaning, repairing and painting of all types of barges and vessels, whether or not owned by Lessee;

(d)    The transfers of all types of cargo from one barge or vessel to another or from or to truck along the Leased Property;

(e)    The changing of boat crews or the provisioning of vessels, and other activities relating to the operation of a fleeting or repair service;

(f)    The storage of rigging and other supplies used in the conduct of Lessee's operations on, at, about or along the Leased Property, or any part thereof;

(g)    The building, equipping and/or repairing of vessels; and/or

(h)    Any and all other activities customarily associated with the above operations and/or with a barge and towboat repair and fleeting operation.

All of the foregoing operations shall be conducted by Lessee in full compliance with all laws, ordinances, rules and regulations of the United States of America, State of Louisiana, Parish of East Baton Rouge, or any other public authority, or agency having jurisdiction over the Leased Property.  Lessor shall not during the term of this Lease enter into any other lease of the Leased Property which would unreasonably interfere with Lessee's said right to use the Leased Property without receiving Lessee's written approval, which approval will be in Lessee's sole discretion; provided that this sentence does not limit Lessor's rights pursuant to the third paragraph of Section 14 below.

9.    During the term of this Lease or any extension thereof, Lessee shall be entitled, at its cost, to construct such mooring or other constructions as it may require in connection with the business being conducted by it on the Leased Property; and shall further be entitled to cause the installation and maintenance of land anchors, deadmen, piling, cables, shorewires, chains and/or dolphins in the Mississippi River and/or on the batture of the Leased Property as may be necessary for the mooring of vessels along the Leased Property, provided that all improvements so made shall satisfy the permit requirements of the U.S. Army Corps of Engineers, State of Louisiana, and any other regulatory agency exercising jurisdiction over the use of the Leased Property, and further provided that all such land anchoring, deadmen, or pilings, or any such anchoring devices shall be buried or driven well below the surface of the surrounding land to the extent reasonably practical.  At the termination of this Lease, Lessor shall designate those improvements except deadmen made by Lessee, which are to be removed at

6889919_5

Lessee's expense within ninety (90) days after designation, and Lessee agrees to complete such removal at its sole expense within such ninety (90) day period. All other improvements, including deadmen, shall become the property of Lessor without any compensation owed to Lessee.

Lessee agrees to and does hereby hold Lessor harmless from all claims, liabilities, damage or loss to Lessor, including reasonable attorney's fees, caused by any use of the Leased Property by Lessee or its contractors, agents, employees or representatives without Lessee obtaining and maintaining all necessary permits and approval.

The provisions of this Section 9 shall survive indefinitely the expiration or termination of this Lease for any reason.

10.     If any law, ordinance, rule or regulation of the United States of America, State of Louisiana, Parish of East Baton Rouge, or any public authority, board or office relating to the Leased Property or the intended use thereof, should materially prohibit or prevent the use of the Leased Property by Lessee for the intended purposes or is applied to enjoin the exercise of Lessee's material rights hereunder, upon written notice of termination given to Lessor, which said notice shall include proof of the circumstance preventing use, Lessor shall have a period of sixty (60) days after said notice to attempt to correct the circumstance preventing use, failing which at Lessee's option, Lessee may terminate this Lease upon written notice to the Lessor specifying the date of termination. In the event that any portion of the Leased Property is taken under the right of expropriation or by a voluntary transfer in lieu thereof to any legal entity vested with the power of expropriation, or is prevented from being utilized for the purposes herein expressed by any action of the U.S. Army Corps of Engineers, Levee Board, or other governmental regulatory authority, including, but not limited to, failure to grant or renew necessary permits or licenses: (A) Lessor agrees to deduct that portion of the river frontage of the Leased Property so affected from the river frontage figure shown above and thereby reduce the rent proportionately for the remainder of that year and all succeeding years of this Lease and any renewals and extensions thereof during which Lessee shall be so restricted; or, (B) at the sole option of Lessee, exercisable in writing no later than 60 days after the date of such taking, transfer or prevention, Lessee shall have the right to terminate this Lease in its entirety.

Upon termination of this Lease by Lessee pursuant to either of the foregoing provisions of this Section 10, (i) Lessee shall have the obligation to remove improvements from the Leased Property in accordance with Section 9 above and (ii) all rights of Lessee under Section 16 shall terminate immediately and in their entirety.

11.     Lessor shall assist and cooperate with Lessee in the obtaining of any and all permits that may be required and will further assist and cooperate with Lessee in maintaining in effect any and all permits that are obtained. Lessee shall bear the costs necessary to obtain such permits.

6889919_5

12.     Lessee shall procure, at its cost, and during the term of this Lease and any extension thereof (and for a period of two (2) years thereafter if such insurance coverage is on a "claims made" basis), shall maintain in full force and effect wharfingers liability insurance and comprehensive general liability insurance against claims for property damage and for bodily injury or death occurring on, in, or about the Leased Property with responsible insurance companies legally authorized to transact business in the State of Louisiana and capable of underwriting the required policy limits; and said insurance shall afford protection to the limits of not less than Ten Million ($10,000,000) Dollars with respect to bodily injury, death or damage to property, and including damage caused by reason of any barges, tow boats, or tugs breaking loose from their moorings.  All policies shall name each Individual Lessor as an additional insured to the extent of Lessee's indemnification obligations under this Lease, and shall provide a waiver of subrogation in favor of Lessor, and Lessee shall provide the Lessor with a certificate of insurance for the above described coverage. Lessee shall endeavor to provide thirty (30) days notice to Lessor prior to cancellation thereof and/or any material changes in the terms of said policies.  Certificates of the foregoing insurance coverage shall be promptly delivered to Lessor.

13.     Lessor shall pay to the party or parties entitled thereto, on or before the due date, all taxes due on the Leased Property, and shall furnish Lessee within a reasonable time thereafter, copies of signed checks in payment of such taxes or evidence that such payments have been made.  If Lessor fails to pay any such taxes when due or institute procedures which suspend the due date, Lessee may, at its option after notice to Lessor, pay on behalf of Lessor directly to the party or parties entitled thereto, any taxes and remit the difference between the rental(s) due hereunder and the amount of taxes paid, as the case may be.  In general, Lessee shall be entitled to cure on behalf of Lessor any default of Lessor to avoid forfeiture of the Leased Property.

14.     Lessor and Lessee, as the case may be, shall indemnify the other against and hold the other harmless from any and all losses, claims, damages or liability for or on account of any injury to (including death of) persons or damage to property, including costs and expenses (including reasonable attorney's fees) incident thereto, to the extent arising from the acts, omissions or negligence of itself, and its agents, servants, contractors, employees or licensees in connection with this Lease and/or the Leased Property.  It is further agreed and understood that the Lessor shall not be responsible for any injury or damage suffered by Lessee or any other person whomsoever, entering upon the Leased Property during the term of this Lease or any extension thereof or damages to their person or property (i) arising from a defective condition(s) in or to or about the Leased Property which are reasonably discoverable by Lessee, (ii) arising out of the operation of Lessee's business or Lessee's use of the Leased Property, or (iii) arising out of or in any way connected with the acts or omissions of the Lessee's employees, agents, contractors, patrons and other invitees.  Lessee assumes all of such risks and liabilities and shall be responsible for any and all such injuries or damages suffered by itself and its contractors, agents, licensees, invitees, and

guests.  The above provisions of this Section 14 shall survive indefinitely the expiration or termination of this Lease for any reason.

Each Individual Lessor severally represents that insofar as his, her or its proportion of ownership, as designated hereinabove, that he, she or it has clear title to such proportion and the person designated pursuant to Section 5 above is entitled to receive the rental payments hereunder on such proportion free and clear of the claims of any other portion, none of the said Individual Lessors in any way warranting that the other Individual Lessors have legal, unencumbered title to their respective designated interests. Notwithstanding the foregoing, so long as Lessee is not in default of its obligations under this Lease, each Individual Lessor severally agrees to maintain Lessee in peaceful possession of the Leased Property and the right of access granted to Lessee during the term of this Lease.

Lessor reserves unto itself or its assigns, the unrestricted right of reasonable access across any or all of the Leased Property for the cutting and harvesting of timber and the exploration or drilling, testing, owning or production, transportation and exploitation of oil, gas and other hydrocarbons on that portion of the Principal Property which does not unreasonably interfere with Lessee's use of the Leased Property, provided that Lessor indemnifies and holds Lessee harmless from and against any and all losses, damages, liabilities, choses in action, costs and expenses incurred or suffered by Lessee to the extent arising from or related to the acts or omissions of Lessor or its assigns, agents, contractors, tenants, or licensees, in connection with this right of reasonable access by Lessor or its assigns.  Should Lessor contract with a third party, or grant a third party a license, to cut and harvest timber, or explore, drill, test, produce, transport or explore for oil, gas or other hydrocarbons as permitted by this paragraph, then Lessor agrees to cause such third party to agree that (A) Lessee shall not be responsible for any injury or damage suffered by such third party or any other person whomsoever, entering upon the Principal Property during the term of this Lease or any extension thereof or damages to their person or property (i) arising from a defective condition(s) in or to or about the Principal Property, which are reasonably discoverable by such third party, (ii) arising out of the operation of such third party's business or such third party's use of the Principal Property, or (iii) arising out of or in any way connected with the acts or omissions of the such third party's employees, agents, contractors, patrons and other invitees; (B) such third party assumes all of such risks and liabilities and shall be responsible for any and all such injuries or damages suffered by itself and all persons whomsoever; and (C) such third party binds and obligates itself to defend, indemnify and hold the Lessee and all of Lessee's representatives, employees, agents, vessels, and contractors harmless from any such claims, demands, suits, causes of action and damages to person or property, including the cost of defense thereof and reasonable attorney's fees incurred in said defense.

Except as provided otherwise in this Lease, Lessee shall be responsible for any civil or criminal consequences of its operations or use of the Leased Property as permitted by Section 8, including, but not limited to damages caused in whole or part by such operations or use; and Lessee further agrees to

6889919_5

indemnify and hold Lessor harmless from and against all claims, debts, penalties, fines, demands, actions and/or causes of action for damages to persons (including death) or property and/or violation of any law or governmental regulation caused by, arising out of, or connected with the operations or use of Lessee hereunder, the condition of the Leased Property and all improvements, or the failure of Lessee to perform any obligation hereof, and to pay any judgement or assessment against Lessor, including reasonable attorney fees and costs, resulting from any suit or proceeding brought thereon. The provisions of this paragraph shall survive indefinitely the expiration or termination of this Lease for any reason.

Lessor reserves the full use and enjoyment of the property covered hereby for all purposes except for those specifically granted and to the extent granted to Lessee; however, Lessor's reservation of right to use cannot interfere with Lessee's operations.

Lessee shall indemnify and hold harmless the Lessor from any and all losses, liabilities, claims and damages including reasonable attorneys fees and all costs of defense, relating to or arising from environmental contamination, discharge or spill or any violation of any Environmental Laws that occur, directly or indirectly, as a result of Lessee's use of or operations on or about the Leased Property, to the extent caused by Lessee or its agents, independent contractors, employees, representatives, subcontractors, invitees or permitted assigns. For purposes of this Lease, **"Environmental Laws"** means any and all federal, state and local laws and all rules and regulations thereunder, now and hereafter existing relating to the manufacture, processing, use, management, treatment, storage, generation, disposal, transportation, handling, clean up, remediation, removal, release or threatened release of materials, substances or fluids of any kind. All indemnification obligations of Lessee in this Lease shall survive any termination or expiration of this Lease.

15.    Lessor and Lessee hereby agree and stipulate to abide by all present or future laws, statutes, regulations and ordinances of all governmental authorities, whether federal, state, parish, municipal and all agencies thereof, including but not limited to, the U.S. Army Corps of Engineers, the Department of Public Works of the State of Louisiana, and the Atchafalaya Levee Board, applicable to the Leased Property and Lessee's operations thereon.

16.    During the Primary Term of this Lease or the Renewal Term, if renewed (the **"Offer Period"**), if Lessor receives or is party to a bona fide offer to enter into a new lease, in good faith, without fraud, which offered lease commences at any time after the expiration of the term of this Lease, and Lessor desires to enter into a lease on such terms, Lessor shall give Lessee written notice of such desire, and in such notice shall state the proposed term and consideration of the proposed new lease and all other pertinent provisions and stipulations. If Lessee desires to enter a new lease in conformity with the proposal made by Lessor, Lessee shall so advise Lessor in writing within thirty (30) days after the date of receipt of such notice from Lessor, and the new lease shall be executed within ten (10) days thereafter. During the Offer Period above stated, Lessor may not lease the Leased Property to any other person, firm,

6889919_5

or corporation without first offering to lease them to Lessee under the procedure provided above in this paragraph. After complying with the procedure stated above, if Lessee does not agree in writing to a new lease under the same terms as proposed by the Lessor within the allotted time, all of the Lessee's rights under this Section 16 shall terminate in their entirety and Lessor may thereafter lease the Leased Property to a third party with no further obligation to Lessee, provided that such lease is not on terms more favorable than the proposal submitted to Lessee.

During the Offer Period, if Lessor receives or is party to a bona fide offer to sell the property, in whole or in part, in good faith, without fraud, of which the Leased Property is a part of the property to be sold and Lessor desires to sell the property on such terms, Lessor shall give Lessee written notice of such desire, and in such notice shall state the proposed price, the terms, and other conditions of the sale. If Lessee desires to purchase said property in conformity with the proposal made by Lessor, Lessee shall so advise Owner/Lessor in writing within thirty (30) days after the receipt of the notice from Lessor, and the sales agreement shall be executed by both parties within ten (10) days of such advice by Lessee. During the Offer Period, Lessor may not sell the property to any other person, firm, or corporation without first offering to sell to Lessee under the procedure provided herein. After complying with the procedure stated above, if Lessee does not exercise its right to so purchase the property, all of Lessee's rights under this Section 16 shall terminate in their entirety and Lessor may thereafter sell the property to a third party, expressly subject to the terms of this Lease, with no further obligation to Lessee, provided that such sale is not on terms more favorable than the proposal submitted to Lessee. Notwithstanding the above, any Individual Lessor shall have the unrestricted right to transfer any or all of his individual undivided right, title and interest in and to the Leased Property to any person, including, without limitation, any other Individual Lessor or a limited liability company or other entity owned by one or more Individual Lessors.

The provisions of this Section 16 shall automatically terminate and be of no force or effect (i) if Lessee is in default under this Lease, and has not cured such default within the applicable time period set forth in Section 17 below, regardless of whether Lessor elects to terminate this Lease, accelerate rentals or take other actions or (ii) upon the expiration or earlier termination of this Lease.

17.    Any of the following shall constitute an Event of Default:

     (a)    If Lessee fails to pay the rental or expense assumed by Lessee in this Lease when due and such failure is not cured within thirty (30) calendar days after written notice from Lessor;

     (b)    If Lessee is adjudicated as bankrupt or becomes subject to voluntary bankruptcy reorganization proceedings; or

     (c)    If Lessee fails to comply with any provisions and/or conditions contained in this Lease, and does not cure said failure within thirty (30) days after receipt of notice from Lessor of said failure.

6889919_5

If any of the Events of Default listed above occur, Lessor shall have the option to do one or more of the following to the extent allowed by law: (i) terminate this Lease immediately, (ii) declare the entire rental for the unexpired term of this Lease to be due and payable (with such payment amount due upon such declaration to be equal to the present value of the scheduled payments for the unexpired term of this Lease discounted at 8% per annum (the **"Discounted Payment"**)) provided that if Discounted Payment is made, then this Lease may not be terminated during the unexpired term for failure to pay rental by Lessee, (iii) proceed for past due installments of rental only reserving the right to proceed for remaining installments later, and/or (iv) exercise any other right or remedy permitted by law.

18.    This Lease is made in, and shall be governed and interpreted by, the laws of the State of Louisiana.

19.    All notices and demands that may be or are required to be given by either party to the other shall be in writing. All notices and demands by Lessor to Lessee shall be deemed to have been properly given if sent by United States Registered or Certified mail, postage prepaid, return receipt requested, addressed to Lessee at 1701 E. Market Street, Jeffersonville, Indiana 47130, ATTN: Legal Department, or such other place as Lessee may from time to time hereafter designate in writing to Lessor. All notices and demands by Lessee to Lessor shall be deemed to have been properly given or made if sent by United States Registered or Certified Mail, postage prepaid, return receipt requested, addressed as follows:

(a)    For each Individual Lessor herein other than KNMW, LLC, Robert H. Williams and Jason Scott Williams, to both Gordon S. LeBlanc, Jr., 3924 Chatfield Avenue, Baton Rouge, LA 70808, and Hermann Moyse, III, 5926 Boone Drive, Baton Rouge, LA 70806, both of whom are hereby appointed agents for each such Individual Lessor, to their successor agent(s) who may be appointed pursuant to Section 5(a), or to such other person(s) or place(s) as each such Individual Lessor may from time to time hereafter designate in writing to Lessee; and

(b)    For each of KNMW, LLC, Robert H. Williams and Jason Scott Williams – to the address as each may from time to time hereafter designate in writing to Lessee.

Such notices shall be deemed to be given two business days after deposit in the U. S. mail, certified mail, return receipt requested.

20.    No modification or variation of this Lease shall be deemed valid unless evidenced by an agreement in writing signed by the parties hereto.

21.    The waiver by either party hereto of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach of any party. No waiver shall be valid unless in writing and signed by the party granting such waiver.

6889919_5

22.    In the event that any one or more provisions of this Lease shall be held invalid, illegal or unenforceable by any court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect the validity or enforceability of any other provision of this Lease.

23.    This Lease may be executed in any number of counterparts, each of which shall constitute one and the same instrument, and either party hereto may execute this Lease by signing any such counterpart.  For purposes hereof, facsimile and electronically scanned pdf copies hereof and facsimile and electronically scanned pdf signatures hereof shall be authorized and deemed effective.  This Lease shall be effective for each Individual Lessor upon his execution and delivery thereof.

24.    The Recitals set forth hereinabove are incorporated herein in their entirety and made a part hereof.

25.    This Lease replaces and supersedes in its entirety the prior lease between the parties hereto or their predecessors which terminates on March 31, 2016.

**[Remainder of page intentionally left blank; signature pages follow]**

6889919_5

**BEFORE ME**, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, Lessee has executed this Lease in duplicate originals at ~~Jeffersonville, Indiana~~, on the 22 day of June , 2016, after due reading of the whole.

<table>
<tr><td></td><td>LESSEE:</td></tr>
<tr><td>WITNESSES TO LESSEE:</td><td>ACBL TRANSPORTATION SERVICES LLC</td></tr>
</table>

*Neil Collins*

*N. Keith Lay*

By: *Paul Tam*
Name: Paul Tbbin
Title: SVP/COO

*Frances A Farrella*
NOTARY PUBLIC

Name: _____    Bar Roll/Notary No. _____

FRANCES A FARRELLA
Seal
Notary Public - State of Indiana
Clark County
My Commission Expires Apr 24, 2024

**BEFORE ME**, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at *BR* , *LA* , on the *3rd* day of *May* , 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:          INDIVIDUAL LESSOR:

_____          _____

_____          Becky L. Simmons

                    _____
                    NOTARY PUBLIC
Name:_____    Bar Roll/Notary No.
        My Commission Expires *at death*

**Joseph G. Simmons**
**Notary Public #07639**

6889919_5

**BEFORE ME**, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at ___BR___ ___LA___, on the _3l_ day of _May_, 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:          INDIVIDUAL LESSOR:

_____          _____
                                          Betty Moyse Simmons

_____


_____
                  NOTARY PUBLIC
Name:_____   Bar Roll/Notary No._____
        My Commission Expires _at death_

**Joseph G. Simmons**
**Notary Public #07639**

Page 15 of 37

BEFORE ME, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at B. R. , LA , on the 3d day of May , 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:        INDIVIDUAL LESSOR:

_____        Jean Moyse Simmons Wilcox
Joseph G. Simmons                      Jean Moyse Simmons Wilcox

_____
Herman Moyse III

                                       _____
                                       NOTARY PUBLIC
                        Name:  Taylor Caffery   Bar Roll/Notary No. 01745
                               My Commission Expires at death

                               Joseph G. Simmons
                               Notary Public #07639

6889919_5

**BEFORE ME**, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at _Metairie, Louisiana_ on the _8th_ day of _May_, 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:          INDIVIDUAL LESSOR:

_Debra T. Powell_                        _Marie Moyse Schlesinger_
Debra T. Powell                          Marie Moyse Schlesinger

_J. G. Odom_
J. G. Odom

_____
NOTARY PUBLIC
Name: _Claude Schlesinger_ Bar Roll/Notary No. _4898_
My Commission Expires _death_.

6889919_5

**BEFORE ME**, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at _BR., LA_ , on the _5th_ day of _May_ , 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:        INDIVIDUAL LESSOR:

_Tyler Colberg_

_Patricia A Day._                      Lewis Arthur Moyse

                    NOTARY PUBLIC
        Name:_____ Bar Roll/Notary No. _____
                    My Commission Expires _____

                    **Joseph G. Simmons**
                    **Notary Public #07639**

**BEFORE ME,** the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at _____, _BR, LA_, on the _4_ day of _May_, 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:     INDIVIDUAL LESSOR:

_____       _____
                                    Hermann Moyse III

_____


                        _____
                        NOTARY PUBLIC
          Name: _____  Bar Roll/Notary No. _____
                My Commission Expires _____
                        **Joseph G. Simmons**
                        **Notary Public #07639**

Page 19 of 37

**BEFORE ME,** the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at B.R. , LA , on the 3l day of May , 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:          INDIVIDUAL LESSOR:

_Betty M Simmons_                          _____
Betty M Simmons                           Joseph Gottlieb Simmons

_Hernwon Moyse III_
Hernwon Moyse III


                                    _____
                                    NOTARY PUBLIC
Name: __Taylor Caffery__   Bar Roll/Notary No. _01746_
                My Commission Expires _at death_

6889919_5

**BEFORE ME**, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at Hammond, Louisiana, on the 31st day of May, 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:     INDIVIDUAL LESSOR:

KNMW, LLC

By: _____

Name: Stephen M. Williams, Sr.
Title: Member/Manager

_____
Sandra Paradelas

_____
Cherie M. Mowen

_____
NOTARY PUBLIC
Andre G. Coudrain, Bar Roll #1789

Page 21 of 37

6889919_5

**BEFORE ME**, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at _____, _____, on the _____ day of _____, 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:    INDIVIDUAL LESSOR:

_____    _____

                                             Robert H. Williams

_____

                          _____
                                NOTARY PUBLIC
          Name:_____ Bar Roll/Notary No. _____
                      My Commission Expires _____.

6889919_5

BEFORE ME, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at *Baton Rouge, LA*, on the *17th* day of *May*, 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:          INDIVIDUAL LESSOR:

_____          _____
Clinton Healey                           Jason Scott Williams

_____
Francine M. Graphia

_____
NOTARY PUBLIC
Name:_____  Bar Roll/Notary No. _____
My Commission Expires _____.

Celeste E. Ellender
Notary Public, ID #9429
East Baton Rouge Parish, LA
My commission is for life.

6889919_5

**BEFORE ME**, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at _____ on the 11 day of May , 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:    INDIVIDUAL LESSOR:

_____
       YASHICA BRADFORD

_____          _____
       Elaine W. Hart                                      Lance LaPlace

                                    _____
                                              NOTARY PUBLIC
Name _____ Bar Roll/Notary No. CC4784
             My Commission Expires _____

6889919_5

**BEFORE ME**, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at _Fairfield, Cal. June 4_, on the _17_ day of _May_, 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:          INDIVIDUAL LESSOR:

_____                _____
                                         Colby LaPlace, Jr.

_____

_____
            NOTARY PUBLIC
Name: _Kristine Letterman_   La. Bar Roll/Notary No. _2056955_
       My Commission Expires _March 5, 2018_

KRISTINE LETTERMAN
Commission # 2056955
Notary Public - California
Solano County
My Comm. Expires Mar 5, 2018

Case 3:20-cv-00139-SDD-EWD    Document 1-2    03/11/20    Page 33 of 69

**BEFORE ME,** the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at _Metairie Louisiana_ on the _29_ day of _April_ 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:    INDIVIDUAL LESSOR:

EAST WEST LANDCO, L.C.

By: _____
    Name:  Vincent Price LeBlanc, Jr.
_____    Title:    Duly Authorized Member
Lauren Jones

By: _____
_____    Name:  Clifton David LeBlanc
Delmis Cruz    Title:    Duly Authorized Member

_____
NOTARY PUBLIC
Name: _Sheila McKinzie_ Bar Roll/Notary No. _050281_
My Commission Expires _At Death_



Page 26 of 37

6889919_5

BEFORE ME, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at _Baton Rouge, LA_____, on the _5th_ day of _May_, 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:          INDIVIDUAL LESSOR:

                                         MSOF CORPORATION

_Clinton G. Haley_____         By: _Gordon S. LeBlanc R._____
Clinton G. Healey                        Name: _GORDON S. LEBLANC, JR._____
                                         Title: _PRESIDENT_____
_Anna K. Barber_____
Anna K. Barber

              _Celeste E. Ellender_____
                    NOTARY PUBLIC
Name:_____ Bar Roll/Notary No. _____
        My Commission Expires _____.


                    **Celeste E. Ellender**
                    **Notary Public, ID #9429**
                    **East Baton Rouge Parish, LA**
                    **My commission is for life.**

6889919_5

**BEFORE ME,** the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at *Baton Rouge, Louisiana*, on the *29th* day of *April*, 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:

INDIVIDUAL LESSOR:

ST. THOMAS POINT, L.L.C.

Donna Boeta

By: *Robert Douglas LeBlanc*
    Name: Robert Douglas LeBlanc
    Title: Manager

Cindy C. Thornton

By: *Linda Jane LeBlanc Thompson*
    Name: Linda Jane LeBlanc Thompson
    Title: Manager

*Pamela P. Peters*
NOTARY PUBLIC
Name: *Pamela P. Peters*  Bar Roll/Notary No. *43940*
My Commission Expires *AT DEATH*

6889919_5

BEFORE ME, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at La Jolla, CA, on the 11 day of May, 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:        INDIVIDUAL LESSOR:

Dawen Lawson

Jori Morris

Holloway Brinkley Lyons
Holloway Brinkley Lyons

_____
NOTARY PUBLIC
Name:_____ Bar Roll/Notary No. _____
My Commission Expires _____.

**See attached notarial certificate.**

# CALIFORNIA ALL- PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California _____ }

County of San Diego _____ }

On May 11.16 before me, Dawn Larson - notary Public
(Here insert name and title of the officer)

personally appeared Holloway Lyons _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Dawn Larson
_____
Notary Public Signature                    (Notary Public Seal)

DAWN LARSON
Commission No. 2107121
NOTARY PUBLIC - CALIFORNIA
SAN DIEGO COUNTY
Commission Expires April 18, 2019

---

## ADDITIONAL OPTIONAL INFORMATION

DESCRIPTION OF THE ATTACHED DOCUMENT

Lease Agreement
_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date _____

CAPACITY CLAIMED BY THE SIGNER
☐ Individual (s)
☐ Corporate Officer
_____
          (Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

2015 Version www.NotaryClasses.com 800-873-9865

### INSTRUCTIONS FOR COMPLETING THIS FORM

*This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  ❖ Indicate title or type of attached document, number of pages and date.
  ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

**BEFORE ME**, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at San Diego, CA on the 16 day of May, 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:      INDIVIDUAL LESSOR:

_____            _____
                                     Margaret DeSaix Brinkley St. Charles

_____


            _____
                    NOTARY PUBLIC
Name:_____    Bar Roll/Notary No. _____
            My Commission Expires _____.

see attached

Page 30 of 37

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _San Diego_

On _May 16, 2016_ before me, _Chris Rhim, NOTARY PUBLIC_
   Date                                    Here Insert Name and Title of the Officer

personally appeared _Margaret Desany St Charles_
                                    Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
            Signature of Notary Public

OFFICIAL SEAL
CHRIS RHIM
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 2103380
SAN DIEGO COUNTY
MY COMM. EXP. MAR. 16, 2019

Place Notary Seal Above

─────────── OPTIONAL ───────────
Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: _____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual    ☐ Attorney in Fact
☐ Trustee    ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual    ☐ Attorney in Fact
☐ Trustee    ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

BEFORE ME, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at _BATON ROUGE_, _LA_, on the _6TH_ day of _MAY_, 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:        INDIVIDUAL LESSOR:

_____        _____
                                        Guy A. Pickering

_____
NOTARY PUBLIC
Name: _PENNY PITTMAN_ Bar Roll/Notary No. _010089_
My Commission Expires _AT DEATH_

Page 31 of 37

**BEFORE ME,** the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at _BATON ROUGE, LA_, on the _6TH_ day of _MAY_, 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:        INDVIDUAL LESSOR:

_____        _Tammy Pickering_
                                        Tammy Pickering

_____        _Penny Pittman_
                                        NOTARY PUBLIC
                                        Name _PENNY PITTMAN_ Bar Roll/Notary No. _010089_
                                        My Commission Expires _AT DEATH_

BEFORE ME, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at _Baton Rouge_ , _Louisiana_ , on the _13th_ day of _May_ , 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:          INDIVIDUAL LESSOR:

_Charles Lucas_                          _Steven M. Wilson_
Charles Lucas                            Steven Wilson

_Lynwood Neaf_
Lynwood Neaf

_James Galladora_

NOTARY PUBLIC

Name: _____      Bar Roll/Notary No. _____
My Commission Expires _____

_James Galladora_
_Notary # 312_
_East Baton Rouge Parish, LA_
_My Commission is for life_

Page 33 of 37

BEFORE ME, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at _Baton Rouge, Louisiana_, on the _13th_ day of _May_, 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:        INDIVIDUAL LESSOR:

_Charles Lucas_                        _Cynthia Wilson_
Charles Lucas                          Cynthia Wilson

_Lynwood Neal_

_James Gallidoro_

NOTARY PUBLIC

Name:_____ Bar Roll/Notary No. _____

My Commission Expires _____

_James Galliano_
_Notary # 312_
_East Baton Rouge Parish, LA_
_My Commission is for life._

Page 34 of 37

BEFORE ME, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at _Baton Rouge, LA_____, on the _13th_ day of _May_, 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:        INDIVIDUAL LESSOR:

GSL CORPORATION

By: _____

_____        Name: _Marion Moffett LeBarr Strain_
_Taylor Mayeux_                       Title: _Secretary_

_____
_Clinton Gene Healey_

_____
_Celeste E. Ellender_
NOTARY PUBLIC

Name: _____  Bar Roll/Notary No. _____
My Commission Expires _____.

Celeste E. Ellender
Notary Public, ID #9429
East Baton Rouge Parish, LA
My commission is for life.

Page 35 of 37

6889919_5

BEFORE ME, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, the undersigned Individual Lessor has executed this Lease in duplicate originals at _Haston_, _Texas_, on the _5th_ day of _May_, 2016, after due reading of the whole.

WITNESSES TO INDIVIDUAL LESSOR:        INDIVIDUAL LESSOR:

LEE BEC LANDS, LTD.

_Kara Parker_                          By: _____
Kara Parker                            Name: Lee H. Cafiero, Jr.
                                       Title: President
_Ben Parker_
Ben Parker

```
LEAH MARIE CAFIERO
Notary Public, State of Texas
Comm. Expires 07-21-2019
Notary ID 128681381
```

NOTARY PUBLIC

Name _Leah Cafiero_   Bar Roll/Notary No. _128681381_
My Commission Expires _7/21/19_.

Page 36 of 37

6889919_5

### Exhibit "A"

Nineteen Hundred Twenty Two and Fifty Nine One Hundredths (1922.59) acres of land, more or less, situated in the Third Ward of the Parish of East Baton Rouge, State of Louisiana in what is known as Devil's Swamp and all being located in Township 6 South, Range 1 West, Greensburg Land District and being designated on the United States Maps and Surveys, approved by Sn. J. McCulloh, Surveyor General of Louisiana, on March 30, 1854, and on file and of record in the Office of the Clerk and Ex-Officio Recorder of the Parish of East Baton Rouge as the following to-wit:

All of Fractional Section Sixteen (16), containing Three Hundred Fifty-Six and 40/100 (356.40) acres;

All of Section Sixty-three (63), containing Six Hundred Seventy Six and 22/100 (676.22) acres;

Lot One (1) of Section Nineteen (19) containing Sixteen and 28/100 (16.28) acres;

Lots Four (4) and Five (5) and Eight (8) of Section Eighteen (18) containing Twenty Seven and 68/100 (27.68) acres;

Lot Three (3) of Section Seven (7), containing Eight and 64/100 (8.64) acres;

The Southwest Fractional Quarter of Section Eight (8) containing One Hundred Thirty Eight and 28/100 (138.28) acres;

The South Half of the Southeast Quarter of Section Eight (8) containing Eighty (80) acres:

All of Section Seventeen (17) containing Five Hundred Ninety Eight and 94/100 (598.94) acres:

Lots One (1) and Two (2) of Section Twenty (20) containing Twenty One and 65/100 (21.65) acres;

Together with and including all alluvion, batture, accretion, and riparian rights.

The above property lies all in one body and is shown on the Official Map of the Parish of East Baton Rouge, made in 1895 by Memers, Kaiser and Swenson, as the three tracts belonging to J.A. and S.L. Wood to Mrs. N.A. Badley and J.A. and S.L.Wood and to H. Madley and W. G. Goyle

6889919_5



Robert (Bob) Williams <solidstonebob@yahoo.com>
To
Gallagher, Sean P. solidstonebob@yahoo.com
11/25/16 at 3:06 PM

November 25th, 2016


To: American Commercial Barge Line,and also to:

David Meffert, and also

ACBL's current (and recently past) officers and/or directors, including, but not limited to:

Mark K. Knoy, President and CEO,

David J. Huls, SVP and Chief Financial Officer,

Paul A. Tobin, SVP and Chief Operating Officer,

Robert M. Blocker, SVP Sales and Customer Service,

Dawn R. Landry, SVP and General Counsel,

D. J. Nichols,

Sean P. Gallagher,


and ALL listed previoiusly, IN CARE OF: Sean P. Gallagher, Esq.,Sr. Corporate Counsel, American Commercial Barge Line,

each and all, both personally and professionally, and also individually, and corporately:


Dear Sirs and Madams,

This most serious missive from me, to YOU EACH and ALL, both individually, and corporately, professionally and personally, is in response to BOTH David Meffert's and ACBL's correspondence dated (and postmarked) this November 17th 2016, ostensibly regarding uncashed checks mailed to me previously (see your ACBL letter to me dated Nov. 17th for references), and also in relation and further response to past emails AND various past correspondences with anyone at or with ACBL, including, but not limited to the following: Sean P. Gallagher (including, but not limited to all those dated July 5th, and July 6th, 2016) and all those referenced and/or those directly with D. J. Nichols, and/or anyone else previously with your firm, et al.

As you should know by now and be familiar with same, ACBL continues to and purports to act and pretends, by both assertion and by overt acts and by conspiratorial acts and otherwise unexplained silence (unexplained other than by your apparently obvious RICO fraud and conspiracies), have a NEW AND (only partially) signed and invalid lease/dock "contract" or "written agreement with all of the Undivided Owners of nearly 2,000 acres of what is and has been commonly known as Devils Swamp in East Baton Rouge Parish, just north of Baton Rouge, La., the same nearly 2,000 acres of land for which your firm previously had an 15 year long NOW-EXPIRED VALID LEASE, which terminated on March 31st, 2016, We both know the plain facts for which it would make no sense for ACBL to even attempt to PRETEND seriously to be unaware of now with insulting faux ignorance.

You at and with ACBL, including, but not limited to your David Meffert, are each and all directed, in response to Mefferts/ACBL's most recent letter to me dated this November 17th, to NOT ONLY re-issue those checks to me that Meffert referenced, but also to CONTINUE RE-ISSUING and RE-MAILING any and/or all checks to me that MAY or MIGHT or ALLEGEDLY in the future come under " …. provisions of applicable state unclaimed property laws . " which

Meffert's letter says must be handled ... "... unless reconciled through others (sic) means. ..."

I have NO intention at this time of cashing these immediately referenced checks (nor NO OTHER FUTURE) checks from ACBL to a INVALID and BOGUS lease, which is at the very least you at ACBL know is an INDISPUTABLE and OBVIOUS RELATIVE NULLITY (practically indisputable under La. State law, both enormously well settled, black letter law, from a standpoint of both statute AND jurisprudence) and which is VOID and BOGUS, under various La. State laws, as well as various other La., TX., IN., State and Federal fraud and anti-RICO statutes.

Each and all of you at ACBL are hereby instructed to consider this as the only "reconciled through other means" solution (in reference to the "uncashed checks" current immediate situation and directive from you to me) that I will consider. Of course I am aware that ACBL might refuse once again to deal with me in good faith, and might once again chart a illicit path, against my wishes and without my approval, as you have in the past, without fail.

THIS brings up the pregnant fact that your previous (and perhaps still present) Senior Counsel Sean P. Gallagher's plain and OBSTINATE REFUSAL to answer each of my simple and straightforward questions and points sent to him in our conversations in our multiple emails between us on July 5th and on July 6th, 2016, relative to your "out of the blue surprise" and alleged but nonetheless BOGUS and NULL contract, negotiated without my input, PURPOSELY and WILLFULLY, and FRAUDULENTLY. And even, if MORE shocking is even possible, ACBL, and its officers and directors did all this, WITHOUT supplying me with formal notice, and IN BAD FAITH, even AFTER THE FACT, of its BOGUS EXECUTION of this nullity, only UNTIL AFTER I in good faith attempted to contact D. J. Nichols, your FORMER LEGAL COUNSEL (whom I had every reason to believe was still in place), July, on the 5th, the same D. J. Nichols with whom I previously corresponded via various means, months before, including email and telephone calls, when suddenly and surprisingly I was informed by ACBL that D. J. Nichols was "no longer with ACBL ..." and instead I should direct all my questions to Sean P. Gallagher. Same story, new people, but sadly, ACBL shows bad faith again, and again.

Even your OWN alleged and bogus and null contract dealing with the Undivided Owners of Devils Swamp speaks about each party being responsible for "good faith" dealings, but, YOU, at ACBL, REFUSE to enter into "good faith" dealings with me, even going so far as instructing me via your new Senior Legal Counsel Gallagher, to deal with others rather than yourself, about a contract WHICH YOU, ACBL, allege to have WITH ME .... but it is a bogus contract you supplied to me after I demanded true and correct copies of from Gallagher, but it proves from your ACBL copy supplied to be a bogus contract, and one OBVIOUSLY and UNDENIABLY blank WITHOUT MY SIGNATURE, blank and WITHOUT any NOTARIZATION, WITHOUT ANY hint or sign of ANY KIND of APPROVAL, WITHOUT ANY GOOD FAITH on the part of ACBL. But even ACBL's own null and invalid and bogus contract improperly and falsely and allegedly "executed" provides for penalties against ACBL, in the case of ACBL showing by their acts a lack of GOOD FAITH on your, ACBL's part. You at ACBL are hoist on your own petard, your own words of your bogus and null contract that you allege and fraudulently act as if it is valid and in good faith! Under that same bogus and fraudulently executed document that ACBL signed, among OTHER possibilities being available to me, is ACCELERATING ALL POSSIBLE or POTENTIAL FUTURE PAYMENTS under the alleged lease contract for the remaining 15 years from ACBL, as well as all potential RICO payments and all automatic RICO TREBLING.

How many of your stakeholders (as you yourselves at ACBL refer to them) are aware of your officers and your directors) are aware of the potentially dire consequences of your bad faith acts and potential frauds and lies, and how much bad publicity and redresses in not only the legal courts, but the courts of public opinion and professional opinion that ACBL will have to absorb, and provide for under your contingent liabilities on your balance sheet?

What frauds and misfeasance and malfeasance might some of the current ACBL officers and

directors potentially consider committing once again in order to withhold these facts and this letter from your CPAs and accounting firm NOW THAT YOU HAVE this most recent (of many notices) in your hands?

What subterfuge might have ALREADY been committed by various officers and/or directors in withholding from those professionals who prepare and issue your balance sheet and financial status, regarding the existence/non-existence of and/or the status of your bogus and null and fraudulent contract dealings regarding the "new but faux" contract regarding Devils Swamp. The SIMPLE and undeniable legal realities that I alone, as merely ONE of the UNDIVIDED OWNERS can walk into court and exercise my UNDENIABLE property right, which right you cannot effectively challenge, to declare this bogus contact of yours NULL and VOID, along with the ripple of all the potential consequences, which could amount in the tens of millions of dollars in court awards against putative RICO defendants as yourselves, in your secretive and yet undisclosed detailed dealings with two (2) FORMER AGENTS (LeBlanc and Moyse) whom I PREVIOUSLY terminated for cause (as you also knew, or should have known) for varied and egregious and multiple shocking breaches of the law of agency, and for all bounds of decency and professionalism by them against me, a fellow UNDIVIDED OWNER, and their own client and principal, by them, my duty bound agents. Perhaps you should brush up on Pennzoil v. Texaco, et al, and and all the ramifications of tortious interference with business relationships, and bribery, et al, also. Perhaps you should brush up Tom Gores and Platinum Equity on all these matters to avoid a "why didn't you either settle this matter when you had the chance, or at least fully apprise me …?" type question down the road.

I would be SHOCKED to the ceiling to imagine that ACBL officers and directors, to a man, and to a woman, have notified everyone who should know BOTH INSIDE ACBL, AND/OR doing professional work for ACBL, such as CPA firms preparing and PUBLISHING your balance sheets (along with the proper and appropriate and corresponding contingent liabilities). And then again, what of the public and potential investors, and your CURRENT STAKEHOLDERS who digest your financial disclosures, EXPECTING … and DUE to receive …. FULL and ACCURATE and COMPLETE DISCLOSURES of contingent liabilities ??!!

I imagaine you at ACBL who read this now surely see how much this was bungled in your mad, headlong dash, to, "on the cheap" potentially conspire with apparently discredited "agents" for some Undivided Owners, who conspired to defraud one (or potentially more) Undivided Owners from their property rights, rather than negotiate in good faith. Your potential anger, ACBL, rather than be directed at me, the mere messenger, who has been robbed and cheated by ACBL, should be reserved and directed at your own potential co-conspirators within ACBL, who tried to and have to this day robbed and pilfered me of my INALIENABLE property rights, just to make extra bucks, rather than in good faith, explore and negotiate, WELL BEFORE you at ACBL, attempted to execute, and did "execute" and null and void and fraudulent contract, perpetrated by robbing me of my property rights to partially sign your bogus contract, and which same bogus contract I can overturn in court.

What route will ACBL go, now?! High road, or more of your filthy, corrupt, LOW ROAD?! Do you wish to hash this out in private settlement, or in public court? If you wish us all to explore all your dirty linen in public court, with my power of production of records and subpoena and deposition, rather than choose private direct settlement, then you at ACBL DESERVE the potentially devastating public exposure and liabilities, that I may just be the FIRST OF MANY OTHERS, with a potentially legitimate axe to grind, or a NEED TO KNOW, such as stakeholders in ACBL.

Gentlemen and ladies, I would suggest that instead of Sean P. Gallagher's slamming the door in my face, you ACTUALLY START THE INITIAL PROCESS OF discussion of POTENTIAL SETTLEMENT of all my potential and prospective claims against you, since I have BOTH the FACTS … AND more than enough requisite documents … AND THE LAW … ALL ON MY SIDE … plus, even at the worst case scenario for me, all it takes is my entering a courtroom to have your obviously bogus and illicit and fraudulently obtained lease declared null and void, and your

legal peril for both you individually, and severally, and for ACBL itself, as potential RICO fraud-feasors is ENORMOUS, and, ADDITIONALLY and CRUCIALLY, something your CPAs and accounting teams do not want you to have to try to HIDE via potential fraud and/or subterfuge and instead appropriately deal with on the CONTINGENT LIABILITIES ledger of your publicly distributed list of assets and liabilities, PLUS, almost ALL, if not ALL, E&O insurance policies, EXCLUDE intentional acts of fraud, and moral turpitude type of misfeasance, and/or malfeasance, from being something that they allegedly cover for you officers and directors under Errors and Omissions Coverage.

I am at the moment Pro Se. Trust me (but check anyway as I know you will do anyway, to confirm if you must that) I have won in court before as Pro Se, when I have not hired attorneys, although I most often prefer to use legal experts. ALL I required in the past to win as a pro se party, against and over teams of high priced attorneys was the LAW AND the FACTS on my side, and I have them in spades here. And, we both know it. Don't underestimate me in court. Should you wisely decide to enter into settlement with me, you will be glad you dodged same in court, and minimized your inevitable costs and exposures, both financial, AND legal, AND professional, and even potentially personal and familial, due to the severity of the potential ripple effect, which are simply TOO GREAT and TOO ENCOMPASSING for me to even guesstimate. Consider even the potential exposures of your own potential past and present multitudinous conflicts of interest under your own Code of Ethics, etc., et al, under one or more corporate investigations, as requested by even so much as a single stakeholder, are enormous and fraught with CASCADING pitfalls, alone. ACBL and its stakeholders SHOULD NOT be faced with opening up Pandora's Box, when it can be easily avoided ! My exposure is nil compared to your ever expanding and titanic exposures and potential scandals and dramas, which can be simply and legitimately avoided by good faith settlement. WHO has MORE to lose in these potentially ever broadening settings from which you cannot corporately nor professionally hide? Let's all get real, in order to help us come to real and fair solutions and put this behind me and behind ACBL, its officers, and its directors. We can do this. If you fail to seriously try, this letter will come back to haunt ACBL, and its officers and directors who tried to squelch the facts with a Watergate type foolish cover-up, when it could have been dealt with responsibly and directly and privately and corporately, IN GOOD FAITH.

You have my contact information. Though greatly hurt, harmed, and offended by ACBL, and at least some of its officers and directors, I can and will be reasonable with both ACBL, all its officers, and all its directors. But I will no longer be insulted cheaply by anyone at ACBL or by ACBL, since the courts will redress my many grievances, and court rendered punishments to ACBL itself, its officers, and/or its directors will be deeply felt for your entire lifetimes, as well they should, should you fail to do the right thing by me. I will NOT be treated and turned aside like a wounded dog. You can deal with me with respect, and I will instantly return the respectful treatment you show me. But choose instead to again wound me like you would treat a mangy mutt that you, while drunk with your own power and money run over and injure again, and then HOPE against HOPE that I will simply go away.... ??

I sure hope for ACBL sake, and all its officers and all its directors sakes' as well as ACBL stakeholders, that the calmest and most circumspect minds and emotions steer the helm away from the shoals ahead (pun intended) to avoid confrontation in public courts, where I have nothing to lose and everything to gain, and where ACBL has nothing to win, and everything to lose, and that is assured by facts and by the law itself, both statute and decades and decades of on point jurisprudence. At least, now you at ACBL know that BOTH SIDES know it. It is your fork in the road, your choice, ACBL, but only at THIS POINT.

Sincerely,

Robert H. "Bob" Williams
11850 U.S. Hwy. 59 N.,
Livingston, TX 77351

936-933-3195

SolidStoneBob@yahoo.com

Copy attached, also, in docx format

- · 2 Attachments
- · View all
- · Download all
  ·

Download
·
RHW letter to ACBL Friday Nov 25 2016 .docx

·

Download
·
201606240933 .pdf
·

**EXHIBIT**
**9**

**From:** "Gallagher, Sean P." <Sean.Gallagher@aclines.com>
**To:** "solidstonebob@yahoo.com" <solidstonebob@yahoo.com>
**Sent:** Mon, Nov 28, 2016 at 8:14 AM
**Subject:** RE: Update, RE: CRUCIAL, IMPORTANT, AND URGENT: Devils Swamp lease proposal(s)

Mr. Williams,


It is not clear what you are asking of ACBL. If you are looking for someone to purchse your interest in the property, I would suggest that you contact the other owners.  If there is specific amendment to the lease that you would like to propose, we would certainly consider it.  However, I would suggest that you work with the other property owners to make sure everyone is on the same page.


Regards,


Sean Gallagher, Esq.

Sr. Corporate Counsel

American Commercial Barge Line

1701 East Market Street

Jefferson, IN 47130

Office: 812-288-0599

Cell: 502-774-0104

Fax: 812-288-0294

Sean.Gallagher@aclines.com

EXHIBIT
tabbies®
10

Robert (Bob) Williams <solidstonebob@yahoo.com>
To
Gallagher, Sean P. Robert Williams
12/04/16 at 5:29 PM
Sunday, December 4th, 2016

Mr. Sean P. Gallagher (SPG), Senior Corporate Counsel of ACBL,

It should be clearly evident to any intelligent and unbiased reader of your email response to mine by you, AND OTHERS that YOU were supposed to forward my email letter to (whom you have NOT signified that you forwarded my email to keep the lines of communication open short of me being forced by your obstinance and delay and feigned ignorance of being able to read the English language) taking legal actions in state or federal court),that you are being intentionally obtuse, and also dilatory, since you address NONE of my issues I raised. You simply cannot convince me that you who have obviously risen to the Senior Corporate Counsel of an International company are naturally such a simpleton that you suppose your mere 4 (four) sentence "pretend" response to my long and serious and crucial letter to you AND to ALL OFFICERS at ACBL and to ALL Board Members of ACBL, as well as to D. J. Nichols, since his actions (both any omissions AND commissions) at his PAST post with your company has drawn him into this personally and professionally and legally, as well as David Meffert with your company, who WROTE ME THE DEMAND RESPONSE LETTER of November 17th by ACBL that I told you, SPG, that I was ALSO RESPONDING to directly, was not even acknowledged, NOR RESPONDED TO BY YOU, even though you have the gall hurl the deliberate lie and insult to me that you believe "... it is not clear what you are asking of ACBL ...." Therefore, you force me into enumerating my points, and demand that you respond accordingly, with your similarly enumerated AND SUBSTANTIVE ANSWERS (or else your accordingly enumerated REFUSALS to respond, so as to give any future jury and judge the opportunity to see the opportunities I supplied that you threw back in my face. So in keeping with your pretense that you did NOT KNOW WHAT I could be asking of ACBL, I will now keep it as direct and explicit as possible, which you have forced me into, so please take no offense at the format of what is essentially YOUR creation caused by your feigned pretenses and your refusals to address issues and questions that you YOURSELF have prompted me in multiple past emails to propose. I need not quote your words anew, because it you were being genuine at all with me, you would already know that you have, be able to confirm that you have, and remember them each and every.

1. SPG, did you forward my email to BOTH ACBL, all its currently listed (on your website) officers, and all Board Members, as well as D.J. Nichols, and to David Meffert?

2. SPG, If you did not forward to anyone on #1 above, please inform me WHICH and WHY NO, when your obviously bogus and relatively null "lease" contract promises "good faith" dealings by ACBL with each and every listed Undivided Owner under the severest of penalties, and you admit and stipulate that I AM a co-owner of the property yourself, both in your most recent email to me, as well as in the bogus, fake, "lease" contract that YOU YOURSELF emailed to me, after I demanded to see a copy of same, but you at the same time refused to answer HOW such a fraudulent, bogus "lease" came about and came to be partially executed, referring me ostensibly to your co-conspirators G.S. LeBlanc and H. Moyse (since they represent as agents a majority of the Undivided Owners except three (3), one of whom is me)?

3. SPG, what on earth is your and David Meffert's and ACBL's official response to his demand letter of November 17th to me for my response? How on earth could ACBL and David Meffert demand a response of me, I supply it to you and David Meffert via you, and then YOU, SPG, reply that it is not clear what I am asking of ACBL, if I am to assume your ACBL communications with me are anything OTHER than the OPPOSITE of the "good faith" dealings which you promise both me and every OTHER Undivided Owner, in your bogus, fraudulently executed, and relatively null "lease" which is obviously NO VALID LEASE CONTRACT, as you and ACBL surely know, since you and ACBL apparently obviously KNEW that you conspired with at least G.S. LeBlanc and H. Moyse to RICO pilfer and defraud me of my property rights as an UNdivided Owner, among other potential offenses ?

4. SPG, what specific sentence in my email can you reference to suggest that I was looking for you or someone else to "purchase" my "interest in the property" ? I am a Texas State licensed real estate agent (and formerly, when I lived in Louisiana, I was also a Louisiana State licensed real estate agent. So for your information, I know how to make an offer to sell, and how to make it unmistakenly. But, SPG, do you know how to recognize one?

5. SPG, I will only assume that you understand SOMETHING of the CRUCIAL issues of the Law of Agency, since you are apparently Senior Counsel of ACBL, which SURELY deals with more dock and property leases than the 2,000 acres

of Devils Swamp which we are dealing with immediately. Assuming that you remember your law school days (or any Mandatory Continuing Education classes to retain your license to practice law, similar to the Law of Agency MCE classes that I must routinely take and pass in regards to maintaining MY real estate license), you SURELY CANNOT labor under the false and scurrilous and ungrounded and unfounded opinion that EITHER YOU at ACBL, or even any collection of any of some of the Undivided Owners of Devils Swamp, can APPOINT an AGENT for me, the Client or Principal ? If you DO labor under this gross legal misconception, please enlighten me as to your total ignorance of the Law of Agency in this regard. If you do NOT labor under this gross legal misconception you keep pretending that you have the right to appoint or send me to (whether that is some of the other Undivided Owners, or someone(s) else, then PLEASE REFRAIN from insulting my intelligence and professionalism, as well as insulting your own intelligence and professionalism at the same time. I am my own agent, principal, and client, and I intend on keeping it that way for the foreseeable future. So please drop the future charades and legal prevarications you have been insinuating in the past again and again. It irks me, as it would any professional in my position, especially since it is the case of the apparent RICO conspirator and fraud feasor and pilferer of my property rights, attempting to steer me wrong as if I lack the professional education I possess in spades. Where is your vaunted "good faith", my dear man, and my dear ACBL Senior Legal Corporate Counsel? You should be ashamed of yourselves, SPG and ACBL.

6. SPG, you again on behalf of ACBL, state in your third (3rd) sentence of your GREATLY SUBSTANTIVE and COMPREHENSIVE four (4) sentence response (pure sarcasm that you deserve), that"... If there is a specific amendment to the lease that you (meaning me, RHW) would like to propose, we (meaning ACBL) would certainly consider it. ..." I have ALREADY and THOROUGHLY in MULTIPLE email letters to you, SPG, and ACBL, clearly established that under Louisiana Law, your supposed "contract" and "lease" is bogus and relatively null under Louisiana law, and I have ALSO implied and/or clearly stated that you, SPG, and ACBL, and its officers and Board Members ALL KNOW that it is, without my authorization and signature and also a notarization for which you and ACBL are ZERO for THREE (0 for 3). You surely apparently knew it beforehand (before your and G.S. Leblanc's and H. Moyse's false and fraudulent execution), I maintain, from your own admissions, and you have assuredly known it after I have accused you to your face of same ! Yet, strangely, at least to a NEW and UNBIASED and putative juror and justice or judge, you have completely failed and apparently refuse to DENY my serious accusations. Of course, I

UNDERSTAND why you would fail to do so and be deafened by the silence, since I have the evidence and proof from YOU YOURSELVES, SPG and ACBL, that you cannot in "good faith" with CREDIBILITY deny the existence of your own statements and documents you supplied to me and/or others, because you don't wish to dig yourself an even deeper legal grave and lose ANY POTENTIAL SHRED of "pretend good faith" in front of a bench AND a jury, so you hope against hope that your cheating poker hand (that you have STOLEN and PILFERED cards from the deck) will somehow improve with time, since it can hardly get worse, since I don't need anything else than what I have for a prima facie case, that may even get a summary judgment, even though you have tried delay after delay, and secrecy and fraudulent conspiracy after secret and fraudulent continuing conspiracy.

7. SPG, you also on behalf of ACBL, in your 4th and last sentence, suggest that I "...work with the other property owners to make sure everyone is on the same page. ...." This is not only a FARCICAL "suggestion", but a GROSSLY INSULTING one .... since the other property owners themselves (if they are their OWN agents, as you imply .... how pregnant phrasing for you to choose, SPG ... lol ... ), nor have any other agents for any of the other property owners, NONE AT ALL have sent me ANY formal notice that the other property owners ALLEGEDLY have a lease contract with me. You can SURELY understand I would reply IMMEDIATELY to ANY other UNDIVIDED PROPERTY OWNER who falsely and insultingly claimed to me (or unknowingly and innocently unaware) that they and I ALL, as ALL of the UNDIVIDED OWNERS, had entered into a "lease contract" with ACBL, that NO SUCH "lease contract" EXISTS !!!Surely you at ACBL can understand that other UNdivided Owners of Devils Swamp IN ALL PROBABILITY have been advised by their own private legal counsel that confronting me that they were aware of the fraudulent way in which G.S. LeBlanc and H. Moyse and ACBL conspired as RICO enterprise members to defraud and pilfer and rob me of my property rights, puts them at potential risk, and even such other UNdivided Owners, were they individually to honestly profess to be unaware and totally uninformed (of the ACBL/LeBlanc/Moyse apparent RICO frauds and thefts and conspiracies) makes their friend or family member Moyse or LeBlanc that much more apparently GUILTY, since such things were done in secret and behind their backs and without their knowledge !!! For the benefit of the other UNdivided Owners who I prefer to assume are innocent beforehand, I prefer not to drag them into such sordid matters, so they can at least profess ignorance of the whole sordid scheme to defraud, and pilfer, and rob A FELLOW UNDIVIDED OWNER of Devils Swamp of HIS INVIOLATE and SACRED CONSTITUTIONAL PROPERTY RIGHTS, even protected specifically by the

United States Constitution along with life and liberty, which state and U.S. federal CONSTITUTIONAL RIGHTS you at ACBL and G.S. LeBlanc and H. Moyse treat with apparent and continuing contempt, disrespect, and insult, so as to refuse to even acknowledge, or attempt to make right. You prompt me for a specific correction to your bogus and fraudulently executed "lease"? There is ONLY ONE THING YOU CAN DO with a RICO bogus, faux "lease document that is an apparent fraud/theft/cheat/pilfer/misappropriation/relative nullity". You can come clean if your false and unworthy pride doesn't cause you to choke on it, rather than expose it to the disinfecting power of light, as acclaimed jurists have phrased it.

It appears, SPG, that you AND ACBL, actually DESIRE and WANT in the most UNSEEMLY and UGLY of ways, to wish that ALL THE OTHER UNdivided Owners of Devils Swamp become as DEEPLY MIRED in the mud and swamp (pardon the intended pun) as G.S. LeBlanc, H. Moyse, and ACBL are ALREADY in an ugly RICO conspiracy and enterprise, perhaps with LeBlanc, Moyse, and ACBL hoping to grab either undeserved sympathy from a jury, or spread-out and diffused liability, or desperate fellow defendants who mortgage and/or risk their Devils Swamp property to magnify efforts to defend the three apparent RICO conspirators known to me already. I WILL NOT HELP OR AID YOU IN YOUR SICK AND UGLY APPARENT ATTEMPTS TO DRAG OTHERS DOWN WITH YOU. If any fellow UNdivided Owner unadvisedly wishes to throw their lot in with you three current entities (3 made up of all the corresponding individual officers and directors), then I as a mere human am confessedly impotent to stop such individual ill-advised and misplaced and mis-perceived loyalties to retroactively assume the legal burden and liability and exposure of things done by others, even their agents, beyond their knowledge and control. If any such sadly informed creatures wish to REQUEST and/or DEMAND that I include them as a KNOWING AND INFORMED AND AWARE co-conspirator to pilfer and defraud and rob me of my INVIOLATE Constitutional property rights, which are deemed by the Constitution as equally protected as my life and/or my liberty, then I will consider that along with their confession at an appropriate time to me, whether sooner or later, with my sad resignation to what facts they profess, not as professional betrayals of an agent to me as their client or principal, which they were not, and could NOT be guilty of, de jure, but only as betrayals of loyalty and duty to fellow UNdivided Owners, which are separate and distinct under the law, unless they acted as secret de facto agents, as G.S. LeBlanc and H. Moyse have apparently done, even after I clearly terminated them as my de jure agents, and for good cause, which agents cannot overcome, in any real event, since a client or a principal, can revoke an agent at any time who is acting in opposition to the welfare and/or full knowledge of his alleged client to whom the agent owes

PRIMARY ALLEGIANCE and PRIMARY LOYALTY, even above and beyond the Agent's OWN WELFARE and LOYALTY.

8. You, and ACBL, SPG, hope apparently to score and kill TWO BIRDS WITH ONE STONE, by enticing and suggesting I work with my FELLOW UNdivided OWNERS in ways that damage BOTH ME .. AND THEM ... ! These are chilling legal suggestions, from a company that professes "good faith" in an apparently larcenous and bogus contract that PURPOSELY and INTENTIONALLY LEAVES ME OUT .. and LEFT ME OUT, with the conspiratorial suggestions and promptings to you of LeBlanc and Moyse. NOW, NOW, AFTER you steal and rob me intentionally of my property rights, you throw me the filthy bone of suggesting an "amendment to your FRAUD and THEFT of me in insult to my birth and Constitutional and God-given rights to life, liberty, and property, which is granted to me as INVIOLATE ????? Who do you ANTI-CONSTITUTIONAL perverted monsters thing you are to not just demand that I sit in the back of the bus, after you have HIJACKED MY BUS, of which I am an UNDIVIDED OWNER ???? But even worse, you eject me OFF the bus, leave my name blank on the perverted and bogus "lease contract", and then act as if you will graciously consider letting me back on the bus you HIJACKED against my will to begin with ???

9. You, and ACBL, SPG, hope apparently I will falsely believe that you at ACBL have some moral (or fake legal) "duty" or "legal obligation" to give credibility to your fake and fraudulent and relatively null bogus "lease contract" by negotiating with fellow UNdivided Owners over an INVALID and bogus "lease contract" with those WHO HAVE NO GREATER LEGAL NOR MORAL RIGHT TO STEAL AND ROB MY GOD GIVEN AND CONSTITUTIONALLY GUARANTEED PROPERTY RIGHTS THAN YOU AT ACBL DO ..... !!!! The other UNdivided Owners have NO GREATER RIGHT to rob and pilfer and steal my property rights than I have to steal and rob and pilfer their property rights !! And I have, and they have, as FELLOW UNdivided Owners, NO rights to go around the courts and avoid due process to defraud any other owner or owners. In fact, by defending MY OWN RIGHTS, whether any single, or group of FELLOW UNdivided Owners understands such, I HELP PROTECT and DEFEND their inviolate property rights, because if anyone, or any prospective group of UNdivided Owners, or any past or present or putative or potential lessee like yourselves, can STEAL AND ROB ME with fraudulent impunity can rob me, then the same people or group can turn right around and steal theirs AS WELL. Should UNdivided Owners jettison and betray their legal duties of loyalty and no-harm to one another to temporarily profit at the expense of a FELLOW UNdivided OWNER that they are legally allied with ?? How putrid of a potential lessee to try, in effect, and/or in

reality, to BRIBE SOME FELLOW UNdivided Owners (and AGENTS) to ignore their lawful duties and obligations of FELLOW UNDIVIDED OWNERS to each other UNdivided OWNER, and betray his or her ownership or their ownership, in order to profit from the bribes of a faux and/or fraudulent "lease contract" that is a relative nullity under Louisiana law. Did ACBL and SPG and LeBlanc and Moyse FULLY DISCLOSE the legal and financial realities and exposures and liabilities of such fraudulent actions to ALL of the UNDIVIDED OWNERS ? If they have not, will ACBL and LeBlanc and Moyse now do so and hold those UNdivided Owners harmless and indemnify these UNdivided OWNERS against the bad acts of ACBL as the bogus "lease" contract says it will ... and must ... ?? Will ACBL accelerate any and all future lease payments due for 15 years to those same UNdivided Owners under the bogus contract ....? Or will ACBL now turn 180 degrees around, and try to tell the UNdivided Owners that ACBL owes NOTHING MORE UNDER THE LEASE because "without Robert H. Williams signature, ACBL is NOT BOUND to a non-properly executed lease contract ?
聽
10. SPG, YOU at ACBL lack such legal authority COMPLETELY to undermine and overturn the U.S. and State Constitutions, the OTHER UNdivided Owners lack such legal authority to undermine the U.S. and State Constitutions, my former agents who betrayed and cheated me of my property rights lack and lacked the same, ALSO.聽 But like a cheap stage magician who CANNOT CONCEAL HIS SLEIGHT OF HAND, you apparently continue to hope against hope that by your using smoke and mirrors, and dilatory tactics you will distract from whether by adding enough extra souls, and numbers of people, you can overcome the U.S. Constitution, et al. I trust I can property voir doire and seat a fair jury and draw an honest and honorable and fair federal (since it most likely would be a federal rather than a Louisiana state jurisdiction) judge who can read the law and the facts of your $5.125 Million Dollar fraudulent transaction and corresponding fraudulent dealings, as well as the automatic trebled damages and legal fees and court costs.

11. SPG, since you offered in your emails in effect to, address my concerns, you can ACTUALLY BEGIN to do so comprehensively in writing, AND FOR THE FIRST TIME, and do it now, point by point, or show yourself to any potential jury or judge as lacking the good faith you pretend to espouse in the relatively null and bogus and fraudulent "lease contract" misappropriated by robbing me of my seat at the table (the bus) that my property rights guarantee me with the U.S. Constitution standing behind me. You can treat me like I am a sub-human or non-citizen, or you can treat me with the same respect and rights due EACH UNDIVIDED OWNER whom you PRETEND FALSELY to have an INVIOLATE

and **INVIOLABLE** lease contract with, but **KNOW** that you **DO NOT.**

Robert H. Williams
11850 U.S. Highway 59 N.,
Livingston, TX 77351

SolidStoneBob@yahoo.com
936-933-3195



On Thu, Aug 16, 2018 at 4:11 PM, Bradley Cunningham
<brad.cunningham@bargeacbl.com> wrote:

Mr. Williams,

Thank you for taking the time to speak with me today.  As we discussed, I will
communicate your offer to ACBL's senior management and will follow up with you
once I have an answer.

Best regards,
Brad



**Bradley E. Cunningham**
Corporate Counsel
brad.cunningham@bargeacbl.com
812-288-0542

On Tue, Sep 4, 2018 at 5:25 PM Robert (Bob) Williams <solidstonebob@yahoo.com> wrote:
Dear Brad,
I hope and trust you and your family had a pleasant and blessed Labor Day weekend. I have a pretty narrow question for you since our mid August conversation, which is merely if you have yet been able to successfully communicate my offer to ACBL's senior management, per your initial email to me, in that intervening time between today and August 16th ? And if not, how much longer would you estimate before you can complete that task as very narrowly defined by me and you ? I of course realize that senior management's time to consider their response is not under your control, which is why I merely ask this more basic question first.

Thanks in advance.
Bob

Sent from Yahoo Mail on Android

On Wed, Sep 5, 2018 at 3:56 PM, Bradley Cunningham
<brad.cunningham@bargeacbl.com> wrote:

Hi Bob,

I have communicated your demand to ACBL senior management and we are working
through the process of pulling together the relevant information and evaluating our legal
position so that we can fairly assess what you are proposing.  As I'm sure you can
appreciate, your demand is significant and therefore requires that we conduct due diligence
on our end before responding.  Our General Counsel (my boss) is out of the office for the
next week or so, but I expect to be meeting with her to discuss our response the week of
the 17th or the following week.  I will keep you advised.

Thanks,
Brad



**Bradley E. Cunningham**
Corporate Counsel
brad.cunningham@bargeacbl.com
812-288-0542

On Fri, Sep 28, 2018 at 4:34 PM Robert (Bob) Williams <solidstonebob@yahoo.com> wrote:
Brad, since it is now well past 3 p.m. of the last business day of the 2 week period by which you
previously referred to as expecting to resolve matters with your boss in being able to respond to me,
can you advise me where things stand ?

Thanks,
Bob

Sent from Yahoo Mail on Android

----- Forwarded Message -----
From: "Bradley Cunningham" <brad.cunningham@bargeacbl.com>
To: "Robert Williams" <solidstonebob@yahoo.com>
Sent: Mon, Oct 1, 2018 at 3:17 PM
Subject: Re: Hello, Brad ... Re: Devil's Swamp Lease
Hi Bob,

I am still working on this -- nothing ever happens quickly in the corporate world.  I am meeting with
some of our operations folks next week to discuss this issue further.

Thanks,
Brad



**Bradley E. Cunningham**
Corporate Counsel
brad.cunningham@bargeacbl.com
812-288-0542

On Thu, Oct 18, 2018 at 1:13 AM Robert (Bob) Williams <solidstonebob@yahoo.com> wrote:
Brad, based upon the dates of your previous email and the time frame you referenced, it is time for an update from you ...
Thanks,
Bob

Sent from Yahoo Mail on Android

On Fri, Oct 19, 2018 at 3:08 PM, Bradley Cunningham
<brad.cunningham@bargeacbl.com> wrote:

Hi Bob,

Could we set up a time next week to have a follow-up conversation?  Monday and Tuesday are
bad for me, but I am available any time Wednesday or Thursday.  Please let me know what might
work for you.

Thanks,
Brad



**Bradley E. Cunningham**
Corporate Counsel
brad.cunningham@bargeacbl.com
812-288-0542

On Fri, Oct 19, 2018 at 5:29 PM Robert (Bob) Williams <solutionsbob@yahoo.com> wrote:
Brad, how about if you call me Wednesday around 10 am ? By the way, if reception gets spotty, we can continue to try to call each other until we finish.
Thanks.
Bob

Sent from Yahoo Mail on Android

----- Forwarded Message -----
From: "Bradley Cunningham" <brad.cunningham@bargeacbl.com>
To: "Robert Williams" <solidstonebob@yahoo.com>
Sent: Mon, Oct 22, 2018 at 7:18 AM
Subject: Re: Thanks, Brad ...
Hi Bob.

That works fine.  I will call you then.

Thanks.
Brad



**Bradley E. Cunningham**
Corporate Counsel
brad.cunningham@bargeacbl.com
812-288-0542